# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Shawn M. Campbell, Respondent.

Appellate Case No. 2021-000252

---

Opinion No. 28061
Submitted September 3, 2021 – Filed September 22, 2021

---

## DEFINITE SUSPENSION

---

Disciplinary Counsel John S. Nichols and Assistant
Disciplinary Counsel Julie K. Martino, both of Columbia,
for the Office of Disciplinary Counsel.

Shawn M. Campbell, of Spartanburg, Pro Se.

---

**PER CURIAM:** In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR). In the Agreement, Respondent admits misconduct and consents
to the imposition of a public reprimand or a definite suspension of up to one year.
We accept the Agreement and suspend Respondent from the practice of law in this
state for four months. The facts, as set forth in the Agreement, are as follows.

## I.

## Matter A

On October 20, 2015, Respondent's bank notified the Commission on Lawyer
Conduct that a check in the amount of $1,000 was presented against insufficient
funds in Respondent's trust account. ODC sent a notice of investigation. On
November 16, 2015, ODC received what purported to be a response to the notice

of investigation from Respondent. It was later discovered this response was written by Respondent's office manager, who intercepted letters from ODC and provided responses without Respondent's knowledge or consent. This response indicated that the office manager was late in taking a deposit to the bank, which resulted in the insufficient funds. The response also indicated that the funds were deposited and the account was reconciled.

Because the response did not adequately explain the reason for the insufficient funds notice or include requested documentation, ODC requested clarification and additional documentation from Respondent. On December 11, 2015, the office manager provided a supplemental response that appeared to be from Respondent. In the response, the office manager attempted to explain that $1,000 was erroneously transferred between accounts and caused the insufficient funds notification. The office manager did not provide a satisfactory explanation for the insufficient funds, nor did she provide all of the information requested by ODC.

Thereafter, Respondent eventually produced additional information that revealed the firm's trust account was short by $3,306.05. Thus, the shortage was caused by more than the $1,000 untimely deposit discussed in the office manager's response. The ODC investigation revealed that several cash receipts reflected on client ledgers were never deposited into the trust account. Disbursements were made from the trust account against the money that was never deposited. In at least one instance, client money that should have been deposited into the trust account was deposited into the operating account instead.

Respondent admits his conduct in this matter violated Rule 1.15(f), RPC, Rule 407, SCACR (prohibiting disbursement before deposit in the trust account) and Rule 417, SCACR (establishing financial recordkeeping requirements).

**Matter B**

On May 11, 2016, Respondent's bank notified the Commission on Lawyer Conduct that a check had been presented against insufficient funds in Respondent's trust account. The following day, ODC sent a notice of investigation to Respondent, who did not respond because the office manager intercepted the notice of investigation. On June 13, 2016, ODC sent Respondent a reminder pursuant to *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982), reminding him of his obligation to respond. Three days later, Respondent called ODC to say he had not received the

notice of investigation and that he would provide a response within a few days. Respondent had not yet learned his office manager was intercepting his mail.

On June 24, 2016, Respondent provided a response to ODC, explaining that after his law partner decided to leave their partnership to work with another firm, Respondent began the process of converting the partnership to a solo practice. Respondent explained that a substantial portion of the funds in the trust account at that time were attributed to his former partner's guardian ad litem files and that the unearned funds were transferred to his former partner's new firm. As to one client, Respondent's former law partner developed a conflict of interest based on his new employment. The client's ledger indicated there was $317.57 in Respondent's trust account. A check was written for that amount and forwarded to the client's new lawyer. This check was the one returned due to insufficient funds in the trust account which triggered the investigation of this matter.

Respondent explained that when he received notice the check had been returned, he investigated and discovered a hand-written check that previously cleared the trust account had not been entered into the firm's accounting software, which caused the account to appear to have more funds than it actually did. Respondent was not performing monthly reconciliations of the trust account and failed to realize the handwritten check was unaccounted for until after the check at issue failed to clear the account. Respondent transferred funds to cover the check and the bank fees, then reissued a check to the client's new lawyer. The second check successfully cleared the trust account on May 17, 2016.

Respondent admits his failure to keep clients' money safe violated Rule 1.15, RPC, Rule 407, SCACR (requiring lawyers to keep client property safe), and that his failure to reconcile the trust account violated Rule 417, SCACR (establishing financial recordkeeping requirements).

## Matter C

During the course of ODC's investigation into Matters A and B, Respondent discovered the firm's office manager had responded to three letters from ODC without Respondent's knowledge or consent. According to the office manager, she responded to the letters without telling Respondent because two weeks before the first letter, Respondent's college-aged son tragically died in a car accident along with four other students. Respondent was out of the office frequently in the weeks and months following his son's death, which lead to the office manager

intercepting the notices of investigation and responding without Respondent's knowledge. When Respondent discovered what happened, he terminated the office manager's employment.

The ODC investigation revealed very little money ran through Respondent's trust account because the majority of his cases were on a flat-fee basis. Most of the money that was deposited into the trust account was attributed to guardian ad litem fees that were held in the trust account until earned. ODC's investigation further revealed that the office manager sometimes took cash that came in from clients for her personal use and later wrote personal checks to replace it. When Respondent's law partner left the firm and client money needed to be transferred to the new firm, the office manager made several deposits via personal checks to cover the shortage in the trust account to ensure the checks to the new firm would clear.

Respondent admits that prior to 2017, he abdicated his responsibility for the trust account to the office manager. Respondent did not perform monthly reconciliations himself and did not adequately supervise the office manager to ensure she knew how to perform the reconciliations. In February 2017, Respondent attended the Legal Ethics and Practice Program Trust Account School. Based on a review of trust account records subsequently subpoenaed by ODC, Respondent is now properly performing trust account reconciliations.

Respondent admits he failed to ensure the firm complied with the financial recordkeeping requirements of Rule 417, SCACR. He further admits his failure to timely deposit cash payments into the trust account, his actions in disbursing before deposit, and his failure to train and supervise the office manager's handling of the financial recordkeeping violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15(c) (requiring deposit of all unearned fees into the trust account); Rule 1.15(f) (requiring deposit before disbursement); Rule 5.3(a) (requiring attorneys with managerial authority to make reasonable efforts to ensure the conduct of all firm employees is compatible with lawyers' professional obligations); Rule 5.3(b) (requiring an attorney to properly supervise non-lawyer staff members); and Rule 5.3(c) (requiring supervising attorneys to ensure conduct of staff is compatible with the Rules of Professional Conduct).

**Matter D**

In January 2017, ODC received a complaint about both Respondent and his former law partner regarding the handling of a matter for Client D. Respondent's former

law partner assisted Client D with various family court matters over the course of several years. In 2011, Client D was charged with first-degree criminal sexual conduct, and Client D hired Respondent's firm to represent him on the criminal charge for an agreed-upon flat fee of $10,000. A $5,000 payment was made on Client D's behalf, and the fee was deposited into Respondent's operating account. Subsequent payments, made by Client D's family and friends, were held in trust until earned. Respondent and Client D did not execute a written fee agreement explaining the flat fee or that some funds would be held in trust.

Respondent's former law partner was primarily responsible for Client D's ongoing family court matter, which concluded with the termination of Client D's parental rights in 2012. Respondent was initially responsible for Client D's criminal matter, although his former law partner ultimately handled a good portion of the trial. Client D was convicted in 2014 and hired Respondent's former law partner to handle the criminal appeal. The fee for the appeal was a flat fee of $3,000. Neither Respondent nor his former law partner executed a written fee agreement with Client D regarding the appeal.

When Respondent's former law partner developed a conflict of interest after leaving the firm, Client D engaged new counsel to handle the appeal and requested that Respondent forward any remaining funds held in the trust account. Respondent forwarded a check in the amount of $317.57, which was returned after being presented against insufficient funds (as discussed in Matter B). Respondent also failed to provide a complete accounting to Client D.

Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.5(b) (requiring a lawyer to adequately explain the basis of the fee to a client); Rule 1.5(f) (requiring flat-fee agreements must be in writing); Rule 1.15 (requiring lawyers to keep client property safe and provide a full accounting).

**Matter E**

Beginning in 2010, Respondent delegated the preparation of payroll tax returns to the office manager. The office manager did not prepare tax returns for every tax reporting period, but when she did, taxes were withheld from employees' checks. Despite these withholdings, Respondent frequently failed to remit payroll taxes and unemployment insurance taxes to the South Carolina Department of Revenue (SCDOR), the South Carolina Department of Employment and Workforce

(SCDEW), and the Internal Revenue Service (IRS). On many occasions, Respondent elected not to pay the payroll taxes or unemployment insurance because he did not have adequate cash flow to operate the law firm. SCDOR and SCDEW placed liens against the firm's assets and against Respondent and his former law partner in eight separate tax years from 2010 to 2019. The IRS placed liens against the firm's assets in five separate tax years from 2010 to 2016. All of the liens against the firm's assets were filed in Spartanburg County. Additional liens arising out of the failure to remit payroll tax withholdings were filed in Greenville County against Respondent and his former law partner personally.

Respondent and his former law partner met with an IRS representative and set up a plan to pay the outstanding taxes, fines, and penalties. Respondent and his former law partner made their respective individual payments to satisfy the personal liens in Greenville County. Respondent continued to make payments on the Spartanburg County liens, and the firm's obligations to SCDOR and SCDEW are now satisfied. However, as to the federal tax obligations, the ODC investigation revealed that in 2020, Respondent still owed over $60,000 in unpaid taxes. At some point, the IRS determined the debt was "currently not collectable" and had not contacted Respondent since 2016. Respondent believed that because he had not been contacted by the IRS, his obligations had been satisfied. However, upon discovering the outstanding obligation, Respondent contacted the IRS to enter a payment plan to pay off the liens, all of which relate to tax periods prior to 2016.[1]

Respondent admits his failure to remit payroll taxes and unemployment taxes violated Rule 8.4(d), RPC, Rule 407, SCACR (prohibiting conduct involving dishonesty).

## II.

Respondent admits his misconduct constitutes grounds for discipline under Rule 7(a)(1), RLDE, Rule 413, SCACR (prohibiting a violation of the Rules of Professional Conduct). In the Agreement, Respondent consents to a public reprimand or definite suspension of up to one year and agrees to pay costs.

---

[1] Although the Covid-19 pandemic has lengthened the negotiations process, Respondent has communicated with the IRS several times and is in the process of finalizing a settlement agreement to pay the taxes, penalties, and fines he owes.

Respondent's disciplinary history includes a 2011 letter of caution citing Rule 1.15, RPC, Rule 407, SCACR (requiring lawyers to keep client property safe) and Rule 417, SCACR (establishing financial recordkeeping requirements).  *See* Rule 2(s), RLDE, Rule 413, SCACR (providing a letter of caution may be considered in a subsequent disciplinary proceeding if the warning contained therein is relevant to the misconduct involved in the subsequent proceeding).

## III.

We find Respondent's misconduct warrants a definite suspension.  Accordingly, we accept the Agreement and suspend Respondent from the practice of law in this state for a period of four months.  Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.  Within thirty days, Respondent shall pay or enter into a reasonable plan to repay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct.

**DEFINITE SUSPENSION.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**